UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC MARINE PROPELLERS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>WARTSILA DEFENSE, INC., BRYAN RUTTER, BOBBY HENINGER,<br><br>Defendants. | Case No.: 17cv555 BEN (NLS)<br><br>**ORDER:**<br><br>(1) **GRANTING IN PART AND DENYING IN PART JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE 1**<br><br>(2) **GRANTING IN PART AND DENYING IN PART JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE 2**<br><br>**[ECF Nos. 23 and 24]** |

Before the Court are two joint motions for determination of discovery disputes. Having reviewed the briefing submitted and for the reasons set forth below, the Joint Motion for Determination of Discovery Dispute 1 is **GRANTED IN PART and DENIED IN PART** and the Joint Motion for Determination of Discovery Dispute 2 is **GRANTED IN PART and DENIED IN PART**.

## I. BACKGROUND

Plaintiff Pacific Marine Propellers, Inc. ("Plaintiff" or "PMP") and Defendant Wartsila Defense, Inc. ("Wartsila") both are in the business of repairing marine propellers. ECF No. 19 ¶¶ 6, 8. In its amended complaint, Plaintiff presents seven claims related to Wartsila's entry into the San Diego marine propeller repair market and its actions in competing for government contracts and subcontracts.

Specifically, Plaintiff alleges that in April 2014, Wartsila contacted Plaintiff and expressed interest in buying all of the assets of Plaintiff, as well as those of its sister corporation in common ownership, North Star Propellers, Inc. Id. ¶ 9. To further sales discussions, Plaintiff's and Wartsila's presidents entered into a confidentiality agreement. Id. ¶ 10. Pursuant to the terms of the agreement, Plaintiff shared confidential and proprietary information (such as customer lists, production costs, labor rates, etc.) with Wartsila so that it could evaluate the prospective purchase of Plaintiff's assets. Id. ¶¶ 10-11.

At the same time it entered into the confidentiality agreement with Plaintiff, Wartsila began competing with Plaintiff for jobs repairing large marine propellers in San Diego. Id. ¶ 23. Plaintiff contends that Wartsila engaged in sham purchase negotiations with Plaintiff in order to obtain its competitor's data, with the ultimate goal of driving down the market value of Plaintiff and/or otherwise putting Plaintiff out of business. Id. ¶ 25. In so doing, Plaintiff alleges that Wartsila illegally underbid multiple marine propeller repair jobs. Id. ¶¶ 29-43.

The problem underlying both of the instant discovery disputes is that Plaintiff is a small, local company, which lacks the financial resources to expend thousands of dollars on the discovery process. ECF No. 23 at 5. Wartsila, on the other hand, is described as a $5.5 billion dollar, international corporation. Id.

///
///
///

## II. DISCOVERY DISPUTE 1

Discovery Dispute 1 addresses Plaintiff's Demand for Production of Documents, Set Nos. One and Two. Plaintiff raises four issues with respect to Wartsila's responses to these demands and accompanying document productions. First, Plaintiff objects to Wartsila producing documents on a rolling basis without specifying an end date for the production. Id. at 3. Second, Plaintiff contends there are three issues with Wartsila's chosen format for producing electronically stored information ("ESI")—namely, that it is unreasonably inaccessible to Plaintiff, unreasonably burdensome, and disorganized. Id. at 4. Third, Plaintiff argues that Wartsila made improper general objections, which should be waived. Id. at 7. Finally, Plaintiff contends that Wartsila should be ordered to produce a privilege log. Id.

### a. Wartsila's Rolling Production

Plaintiff asserts that Wartsila has failed to comply with Rule 34 of the Federal Rules of Civil Procedure by producing documents on a rolling basis without identifying the beginning or end dates of the production. Id. at 3. Rule 34 provides that if the responding party intends to produce electronically stored information instead of allowing inspection, "[t]he production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response." Fed. R. Civ. P. 34(b)(2)(B). The 2015 Advisory Committee Notes following Rule 34 further clarify that "[w]hen it is necessary to make the production in stages the response should specify the beginning and end dates of the production." Fed. R. Civ. P. 34 advisory committee notes (2015 Amendment). Here, Wartsila stated in its responses to both sets of document demands that it would produce documents on a rolling basis, but did not indicate when the production would begin or end. ECF No. 23-3 ¶ 11. During the subsequent meet and confer session, which took place on September 1, 2017, Wartsila's counsel advised that the first production would occur by September 8, 2017. ECF No. 23-2 ¶ 3. The first production of nearly 5,000 pages did, ultimately, occur on that date, and was followed by a second production on September 28, 2017. Id. ¶ 4. Thus, the

issue of when production will begin is now moot.

Plaintiff is correct, though, that Wartsila must provide an anticipated end date for production so that Plaintiff may plan its discovery accordingly. In its briefing for this motion, Wartsila indicated that it anticipated producing a third volume of documents by October 13, 2017, "with a goal of having its assessment and review of the remainder of the review set substantially completed by Monday, October 23, 2017." ECF No. 23 at 10-11. Given that the review set Wartsila has identified consists of over 76,000 records and 30 GB of data (Id. at 10), this time frame is reasonable. Wartsila represents that it engaged a document review team to expedite the review, and thus is taking steps to comply in a prompt manner. In order to ensure that Wartsila complies with its obligations, and to provide Plaintiff with a date certain, the Court hereby **ORDERS** Wartsila to complete its production of documents in response to Plaintiff's Demand for Production of Documents, Set Nos. One and Two by **October 27, 2017**.

### b. Format of ESI Production

Plaintiff next takes issue with the format in which Wartsila has chosen to produce its documents. Though Plaintiff admits that it did not request in its document demands that ESI be produced in a certain format, counsel for Plaintiff submits that she informed Wartsila's counsel during the September 1, 2017 meet and confer that Plaintiff wanted documents produced in OCR searchable PDF format. ECF No. 23 at 4-5. Instead, Wartsila produced documents in the form of TIFF images (.tif) with Concordance/ Opticon (.dat/.opt) data load files and extracted text (.txt) files, with Excel spreadsheets being produced as native files (.xls, .xlsx).[1] Id. at 11.

While the parties' briefing focuses on disputing the accessibility, cost, and organization of Wartsila's production format, the Court finds that determination of this issue turns on Wartsila's failure to produce in the format requested by Plaintiff. Rule 34

---

[1] For the ease of discussion, the Court will refer to these production specifications as the "Concordance format."

4

provides that the request "may specify the form or forms in which electronically stored information is to be produced." Fed. R. Civ. P. 34 (b)(1)(C). Where, as here, the requesting party does not specify in its request what form should be used, the responding party "must state [in its response] the form or forms it intends to use." Fed. R. Civ. P. 34 (b)(2)(D). The purpose of this requirement to state the intended form before actually producing documents is to give the parties the opportunity to meet and confer to "seek to resolve disputes before the expense and work of the production occurs." Rule 34 advisory committee notes (2006 Amendment).

Here, the parties met and conferred seven days before Wartsila's first production and Plaintiff's counsel stated at that time that she wanted the documents produced as OCR searchable PDF files. Wartsila does not state in its briefing why it did not want to produce documents in that format or make any argument as to why it should not be required to, other than that it now already has produced documents in the Concordance format. However, the fact that Wartsila subsequently offered to re-produce documents in PDF format, and that it states doing so would involve only a "marginal" cost, belies any argument that doing so would have been unduly burdensome or expensive in the first instance. Indeed, while Wartsila argues that its production is appropriate because it produced ESI in a readily-usable form, "the option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation." Fed. R. Civ. P. 34(b) advisory committee note (2006 amendment). While Concordance format may be reasonably usable for some, Plaintiff's counsel makes clear that it is unduly burdensome and expensive for her client. Because Wartsila should have produced the documents initially as requested by Plaintiff, the Court **ORDERS** Wartsila to re-produce any documents it has produced to date as OCR searchable PDF files and incur the cost of doing so. This re-production shall be completed on or before **October 27, 2017**.

Plaintiff's final objection to the form of Wartsila's production is that it is unorganized.  ECF No. 23 at 5.  Because Plaintiff has been unable to open the TIFF images within a document review program that can accommodate load files, Plaintiff is unable to determine whether the documents were produced "as they are kept in the usual course of business" and, thus, requests that Wartsila be ordered to identify which Bates ranges are responsive to each request.  Id. at 5-6.  The Court finds that Plaintiff cannot have it both ways.  Over the course of eleven weeks, Plaintiff has served seven sets of requests for production on Wartsila, totaling over 90 requests.  Id. at 10; ECF No. 24 at 5.  Searching for responsive documents required Wartsila to collect entire drives of data from seven custodians, totaling approximately 1.1 million records and 280 GB of data.  ECF No. 23 at 10-11.  It then employed search terms and date restrictions to narrow that collection into a more manageable review set, which still constituted over 76,000 records and 30 GB of data.  Id. at 11.  At that point, Wartsila engaged a review team in order to expedite the assessment and review of the review set.  Id. at 10.  Wartsila was required to use e-discovery software to handle this mass of documents and the expense for Wartsila of collecting, culling, and reviewing this many documents undoubtedly was substantial.

When a team of reviewers is required to assess that great a quantity of documents, it is not reasonable to assume that the production, once collected from each reviewer, will remain in the order it was kept in the usual course of business.  Thus, Wartsila produced the documents in a "reasonably usable form," as required by Rule 34.[2]  If Plaintiff

---

[2] With the assistance of an e-discovery review platform, documents in the Concordance format can be sorted by custodian or date, filtered using a variety of search terms, or otherwise organized in whatever manner Plaintiff wishes.  See ECF No. 23 at 12.  Review platforms that can accommodate this format are readily available.  Indeed, Wartsila provides three examples of popular document review programs that support the Concordance format (including Clearwell, Relativity, and Axcelerate).  Id. at 11-12.  Further, Plaintiff's counsel *de facto* acknowledges that the two e-discovery vendors she contacted could access the documents.  Id. at 5; ECF No. 23-3 ¶ 14.  Counsel for Wartsila also contacted one of the same vendors and confirmed that the vendor could utilize Concordance files in their document review platform, Relativity, and do so on either a PC or a Mac computer (because it is a web-based platform).  ECF No. 23-2 ¶ 11.  The Court, therefore, finds that the Concordance format is a reasonably usable form.

chooses to serve a substantial number of document requests but not to utilize the Concordance format due to expense, that is Plaintiff's choice, but the Court does not find it appropriate to force Wartsila to incur the additional burden and expense of designating Bates ranges responsive to each request when the problem is of Plaintiff's own making.

### c. **Wartsila's General Objections**

In every written response, Wartsila set forth a list of identical "General Objections and Limitations" to Plaintiff's requests. ECF No. 23-1 at 2. Because the objections are not set forth with specificity as required by Rule 34, Plaintiff argues that the general objections should be overruled and that the Court should find that they are waived. ECF No. 23 at 7. Wartsila responds that its general objection as to privilege is appropriate and that it otherwise simply states that it will conduct a diligent search and a reasonable inquiry. Id. at 13-14.

Under Rule 34, the response to each document demand must "state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). Further, any objection "must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). If the objection only pertains to part of the request, the responding party "must specify the part and permit inspection of the rest." Id. The Advisory Committee Notes following the rule clarify that "[a]n objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been 'withheld.'" Fed. R. Civ. P. 34 advisory committee notes (2015 Amendment).

Plaintiff's primary concerns are with Wartsila's general objections as to: (1) privilege or work-product protection, (2) protection of confidential, proprietary, or sensitive business information before the Court has entered a protective order, and (3) the limitation that Wartsila was not making a representation that it had any responsive documents in its possession, custody or control, but would "conduct a diligent search and a reasonable inquiry" in attempting to locate responsive documents. ECF No. 23-1 at 3-4. In regard to privilege, Plaintiff asserts that the representation that Wartsila will

7

produce "non-privileged documents" is insufficient without production of a privilege log. Id. at 3. As will be discussed more below, Wartsila has stated that it will produce a privilege log. ECF No. 23 at 13.

It appears the objection over confidential information similarly will be resolved soon, once a protective order is entered. The parties have discussed the terms of a protective order, but were unable to agree on some issues as of the date of the joint motion. ECF No. 23-1 at 3. Until such time as a protective order is entered, the parties have agreed to treat documents marked "confidential" as if a protective order is in place. Id. Further, Wartsila represents that it "has not withheld documents based on this general objection." Id. at 4.

The Court, therefore, finds it appropriate to set a deadline of **November 3, 2017**, by which time the parties either must submit their proposed protective order or file a joint motion for determination of the dispute regarding the terms of the protective order.

Finally, with regard to Wartsila's limitation on its search efforts, Plaintiff's concern is that it makes it unclear whether Wartsila has, in fact, produced any documents in response to each given request. Id. at 4. This, again, relates back to Plaintiff's difficulty in searching through Wartsila's production in its current Concordance format in order to verify whether responsive documents have been produced. Id. The Court's ruling that Wartsila must reproduce documents in OCR searchable PDF format, complete its production by **October 27, 2017**, and provide a privilege log by **November 10, 2017** (see below), should resolve Plaintiff's issues regarding the completeness of Wartsila's production.

Because Wartsila has agreed to provide a privilege log, and because the parties are equally culpable in bringing this motion before agreeing to the terms of a protective order, the Court declines to find that Wartsila has waived its objections as to privilege and confidentiality.

///

///

### d. Privilege Log

Plaintiff objects to Wartsila's withholding of privileged and work-product documents without providing a privilege log. ECF No. 7-8. Wartsila states that it "does not dispute that documents withheld as privileged should be included on a privilege log, and will provide a log once its production is completed." Id. at 13. As the Court already has set a date by which Wartsila must complete its document production, the Court now **ORDERS** Wartsila to provide Plaintiff with a completed privilege log on or before **November 10, 2017**.

### e. Miscellaneous Objections

In the joint statement, the parties set forth each disputed document demand, Wartsila's response, Plaintiff's reasons to compel, and Wartsila's basis for objecting. The Court has reviewed all of these and rules as follows:

   i. The Court concludes that any issues relating to Demand Nos. 1-3 and 6-20 should be resolved once production is completed and a privilege log is produced, in accordance with the requirements set forth in this Order.

   ii. Plaintiff's motion to compel documents in response to Demand No. 21 is **DENIED**. Plaintiff requested "all documents concerning any policy regarding or related to the price and/or terms [Wartsila] would include in any bid to supply marine propeller repair services …" and then clarifies in its briefing that it seeks documents that inform and explain the "standard terms and conditions" referenced in Wartsila bid documents. ECF No. 23-1 at 17-18. In so doing, Plaintiff attempts to re-write a vague request. Plaintiff also solicits conjecture as to what policies Wartsila *would* apply in preparing bids. If Wartsila represents that it has no documents evincing written policies regarding the prices and/or terms it would (versus has in the past) included in bids, the Court does not find cause to order a further response.

iii. With regard to Demand Nos. 24-26 and 31, the parties acknowledge that they have not met and conferred in an effort to resolve their disputes informally. The Court, therefore, will not consider those issues at this time.

iv. Wartsila refused to produce documents in response to Demand Nos. 27-30, which all seek documents related to Wartsila's successful bids for propeller repairs to U.S. Navy vessels at either its Chesapeake, VA facility or its Poulsbo, WA facility. ECF No. 23 at 21-24. Wartsila asserts that these demands seek information that is not relevant to the claims or defenses at issue, which relate to propeller repairs at Wartsila's San Diego facility, and that are not proportional to the needs of the case. Id. at 21. Plaintiff's amended complaint includes claims under California Business and Professions Code § 17043, which states that "[i]t is unlawful for any person engaged in business within this State to sell any article or product at less than the cost thereof to such vendor, or to give away any article or product, for the purpose of injuring competitors or destroying competition."[3] Plaintiff alleges that Wartsila used personnel from its Chesapeake and Poulsbo facilities, billed at the rates set for those facilities, to conduct the work in San Diego. Thus, discovery that would allow Plaintiff to calculate what Wartsila should have bid for its San Diego jobs and what costs it actually incurred is necessary to prove its claims that Wartsila underbid the projects in order to injure Plaintiff and either drive it out of business or force a sale to Wartsila at a reduced rate. The Court,

---

[3] California Business and Professions Code § 17024 provides that "'article or product' includes any article, product, commodity, thing of value, service or output of a service trade."

therefore, **GRANTS** Plaintiff's motion to compel responses to Demand Nos. 27-30. Warsila shall serve supplemental responses by **November 10, 2017**.

### III. DISCOVERY DISPUTE 2

The parties' second discovery dispute addresses Plaintiff's objections and responses to Wartsila's document demands and to its Interrogatories (Set One), Nos. 1-7. ECF No. 24 at 1. Specifically, the following issues are in dispute: (1) Plaintiff's failure to produce metadata, (2) Plaintiff's objection that the interrogatories contain impermissible subparts and are overbroad and burdensome, and (3) Plaintiff's incomplete responses to Wartsila's interrogatories. Id. at 6-9.

#### a. Metadata

In conjunction with its document demands, Wartsila specified the form in which it wanted ESI produced. Id. at 2. In particular, Wartsila laid out specifically in an exhibit the combination of TIFF images, Concordance load files, extracted text, and native files discussed above. ECF No. 24-3. Further, Wartsila specified that "at minimum, [ESI should be produced] in a form that includes all data and metadata and that states the computer hardware and software programs needed to translate the information into readable and searchable form." Id. at 2; ECF No. 24-2 ¶ 4. Plaintiff did not object to this format in its responses and Plaintiff's counsel affirmatively stated during the meet and confer session that she would gather all metadata. ECF No. 24 at 2. Despite this, what Plaintiff's counsel actually produced were documents that the client had self-collected (in some instances printing emails and their attachments) and sent to Plaintiff's counsel. Id. at 3. Plaintiff's counsel then scanned these hard copy documents and produced them as searchable PDFs. Id.

Under Rule 34, if the requesting party specifies the form in which electronically stored information is to be produced, the responding party may object, but then must state the form it intends to use instead. Fed. R. Civ. P. 34 (b)(2)(D). As previously noted, the purpose of this requirement is to facilitate meet and confer efforts and to "seek to resolve

disputes before the expense and work of the production occurs." Rule 34 advisory committee notes (2006 Amendment). Here, Plaintiff's counsel muddled the system by not objecting to the requested format in her responses. Given that she ultimately produced PDFs that she created by scanning hard copies, the Court is at a loss to understand why she ever affirmatively represented that she would produce metadata.

This leaves the Court in the position of weighing fairness, cost, and proportionality. The Court is cognizant of the fact that in response to Discovery Dispute 1, it ordered Defendant to produce documents in Plaintiff's requested format, so fairness would dictate requiring the same of Plaintiff. But to do so would ignore Plaintiff's inability to pay for an e-discovery vendor to facilitate the production of metadata. Rule 26 allows the Court to limit discovery if a party shows "that the information is not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). Upon such a showing, the Court still may order the discovery if the requesting party shows good cause, though the Court must remain mindful of the limitations that the discovery not be unreasonably cumulative or duplicative or obtainable from a more convenient, less burdensome, or less expensive source. Fed. R. Civ. P. 26(b)(2)(B)-(C); see also U.S. ex rel. Carter v. Bridgepoint Educ., Inc., 305 F.R.D. 225, 237 (S.D. Cal. 2015) (explaining that even where the documents otherwise are discoverable, "in determining whether a [particular] discovery request is overly costly or burdensome in light of its benefits, ... [a] court ... [must] ... consider the necessity of discovery," and is "properly encouraged to weigh the expected benefits and burdens posed by particular discovery requests (electronic other otherwise)") (internal citation omitted). The Court also takes into consideration that courts increasingly are encouraged to ensure that discovery is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

12

17cv555 BEN (NLS)

Frequently, cases evaluating the undue burden or cost of producing ESI involve either restoring relatively inaccessible backup tapes and/or exorbitantly priced and incredibly voluminous discovery. See e.g., Bridgepoint, 305 F.R.D. at 240-43 (involving restoration of backup databases at a projected cost of over $2 million); Kilbourne v. Coca-Cola Co., No. 14CV984 MMA (BGS), 2015 WL 10943827, at *6 (S.D. Cal. Apr. 24, 2015) (evaluating production of voluminous data where production was estimated to cost $1,866,000 and even a sample size of data would cost $100,000 to produce); Northrop Grumman Corp. v. Factory Mut. Ins. Co., No. CV058444DDPPLAX, 2012 WL 12875772, at *4 (C.D. Cal. Aug. 29, 2012) (balancing cause and burden where the restoration of classified tapes was projected to take over a year and cost more than $1.4 million and non-classified tapes could be restored at a cost of $146,000). Neither is the case here, which puts this case on somewhat unique footing. Additionally, the facts before the Court demonstrating Plaintiff's limited means and Wartsila's need for the metadata are limited. Plaintiff's counsel submits that she contacted a vendor and received a price list for producing ESI. ECF No. 24-6 at 3. Based upon this information, she anticipates the cost will be $4,195.00 initially, with monthly charges of $262.00. Id. at 3-4. According to the CEO and President of Plaintiff, this would be a financial hardship for Plaintiff. Id. at ¶ 7. In light of this showing of inaccessibility due to undue cost, the Court turns to Wartsila's showing that good cause exists to order electronic production of the metadata. From the information before the Court, it appears Wartsila's primary concerns are that (1) some emails were not produced together with their attachments and (2) at least one email lacks the email recipient and date. ECF No. 24 at 3. These are legitimate concerns. With regard to the email lacking recipient and date information, Plaintiff explains that this email was neither authored by Plaintiff nor electronically received by Plaintiff, so no metadata exists for this document. Id. at 11. Plaintiff's counsel states that she has reviewed the documents produced by Plaintiff and that "nearly all of the emails that were sent or received by PMP, that were produced in discovery state the email address of the sender and recipient(s), including CCs and BCCs

(as applicable); the subject line; and the date and time the email was sent." ECF No. 24-6 at ¶ 3. Others, such as the one cited above, were obtained only as printouts. Id. Plaintiff's counsel does not specifically respond to Wartsila's assertion that emails are not paired with their attachments.

On the limited record before it, the Court concludes that Wartsila has not shown good cause to require electronic production because it appears the issues can be resolved via less expensive means. The Court, therefore, **DENIES** Wartsila's motion to compel electronic production of metadata **WITHOUT PREJUDICE**. For any emails that indicate on their face that they contain an attachment, Plaintiff is **ORDERED** to provide the Bates range of the attachment by **November 10, 2017**. To the extent other documents in the production lack relevant metadata such as dates, the parties are **ORDERED** to meet and confer to attempt to resolve these issues.[4]

### b. Interrogatories

Wartsila contends that Plaintiff served incomplete responses to its first seven interrogatories. ECF No. 24 at 6-9. In Interrogatory Nos. 1-6, Wartsila asked Plaintiff to identify various conversations it had and defined "identify" as meaning "to provide the date or approximate date, place, method and content of each such communication, as well as the persons present and last known contact information for all such persons." Id. at 6. Plaintiff objected to the term "identify" as "overbroad and burdensome containing an unreasonable number of subparts" and "overbroad and burdensome in the amount of detail demanded." Id. at 6-7.

Rule 33 limits the number of interrogatories a party can serve on another party to 25, including all discrete subparts. Fed. R. Civ. P. 33 (a)(1). The subparts language was included to clarify that "[p]arties cannot evade this presumptive limitation through the

---

[4] It would behoove both sides to consider including their technical experts in this meet and confer session to advise as to the most cost-effective and expedient manner of rectifying deficiencies in the production(s).

device of joining as 'subparts' questions that seek information about discrete separate subjects." Fed. R. Civ. P. 33 advisory committee notes (1993 Amendment). However, as Wartsila points out, the Advisory Committee Notes expressly state that "a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication." Id.

Here, Wartsila's interrogatories directly track the Advisory Committee's example of topics that can be considered part of one interrogatory. The additional information Wartsila seeks is the method of the communication and the last known contact information for the individuals present. The Court does not find these to constitute "separate subjects." A key fact in identifying a communication is whether it was oral or written and identifying the individuals present is of limited use to the requesting party if they do not know how to contact the individuals. That being said, Rule 33 also was revised in conjunction with revisions to the disclosure provisions of Rule 26 in order to negate the need for a great number of interrogatories. Id. So, to the extent Plaintiff already has disclosed as part of its initial disclosures the last known contact information for individuals identified in response to Wartsila's interrogatories, Plaintiff need not restate the contact information in its interrogatory responses.

Having reviewed Plaintiff's responses to Interrogatory Nos. 1-6, the Court finds them lacking as to the information requested by Wartsila. Though Plaintiff argues that most of the communications were oral and thus the exact dates are unknown, Plaintiff makes no effort to provide approximate dates. In several instances, Plaintiff also left out the content of the conversations listed, the method, and the other individuals present for the communications. For these reasons, the Court **OVERRULES** Plaintiff's subparts objection to Wartsila's definition of "identify" and **ORDERS** Plaintiff to provide supplemental responses to Interrogatory Nos. 1-6 on or before **November 10, 2017**.

Interrogatory No. 7 asked Plaintiff to "[i]identify all persons having knowledge of your claims and the defenses you anticipate to your claims, and the general parameters of

each person's knowledge." ECF No. 24 at 8 n.7; ECF No. 24-1 at 13. In response, Plaintiff stated "[a]ll such persons and the general parameters of their knowledge are disclosed elsewhere in our responses to these interrogatories, in our responses to Requests for Production of Documents, and/or in our Initial and Supplemental Disclosures under Rule 26 of the Federal Rules of Civil Procedure." ECF No. 24-1 at 13. Wartsila objects that the reference to persons disclosed in Plaintiff's responses to document requests is insufficient because the interrogatory response must be complete in itself and may not generally refer Wartsila to Plaintiff's entire document production. ECF No. 24 at 9. Additionally, the only individuals identified in Plaintiff's responses to Wartsila's document requests were James King and Plaintiff's now-deceased CPA, David Park, and the responses do not identify the parameters of their knowledge. Id.

The Federal Rules do allow for reference to business records in responding to an interrogatory, but the responding party must identify the records "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d)(1). In particular, the "responding party has the duty to specify, by category and location, the records from which answers to interrogatories can be derived." Rainbow Pioneer No. 44-18-04A v. Hawaii-Nevada Inv. Corp., 711 F.2d 902, 906 (9th Cir. 1983) (quoting Fed. R. Civ. P. 33(c) advisory committee notes (1980 Amendment)). As Plaintiff already has produced documents, Plaintiff is **ORDERED** to provide a supplemental response to Interrogatory No. 7 by **November 10, 2017**, and, to the extent Plaintiff relies on documents in responding, Plaintiff must specify the Bates ranges of the documents responsive to Interrogatory No. 7.[5]

///
///
///

---

[5] To the extent Wartsila objects to Plaintiff's reference to its initial and supplemental disclosures, the Court **OVERRULES** the objection. Plaintiff's disclosures are readily available to Wartsila.

## IV. CONCLUSION

For the foregoing reasons, the Joint Motion for Determination of Discovery Dispute 1 is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Wartsila is ordered to complete its production of documents in response to Plaintiff's Demand for Production of Documents, Set Nos. One and Two by **October 27, 2017**.
2. Wartsila is ordered to re-produce any documents it has produced to date in response to any of Plaintiff's document requests as OCR searchable PDF files and incur the cost of doing so. This re-production shall be completed on or before **October 27, 2017**.
3. Plaintiff's requests that Wartsila be ordered to identify which Bates ranges are responsive to each request for production is **DENIED**.
4. On or before **November 3, 2017**, the parties either must submit their proposed protective order or file a joint motion for determination of the dispute regarding the terms of the protective order.
5. Wartsila is ordered to provide Plaintiff with a completed privilege log on or before **November 10, 2017**.
6. Plaintiff's motion to compel documents in response to Demand No. 21 is **DENIED**.
7. Plaintiff's motion to compel responses to Demand Nos. 27-30 is **GRANTED**. Warsila shall serve supplemental responses by **November 10, 2017**.

The Joint Motion for Determination of Discovery Dispute 2 is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Wartsila's motion to compel electronic production of metadata is **DENIED WITHOUT PREJUDICE**. Plaintiff is ordered to provide supplemental responses to Wartsila's Request for Production of Documents on or before **November 10, 2017**. In responding to any requests that for which the responsive documents are emails, if the emails indicate on their face that they

17

contain an attachment, Plaintiff is ordered to provide the Bates range of the attachment. To the extent other documents in the production lack metadata such as the date, the parties are **ORDERED** to meet and confer to attempt to resolve those issues.

2. Plaintiff's subparts objection to Wartsila's definition of "identify" in Wartsila's Interrogatory Nos. 1-6 is **OVERRULED** and Plaintiff is ordered to provide supplemental responses to Interrogatory Nos. 1-6 on or before **November 10, 2017**.

3. Plaintiff is ordered to provide a supplemental response to Interrogatory No. 7 by **November 10, 2017**, and, to the extent Plaintiff relies on documents in responding, Plaintiff must specify the Bates ranges of the documents responsive to Interrogatory No. 7.

**IT IS SO ORDERED.**

Dated: October 20, 2017

Hon. Nita L. Stormes
United States Magistrate Judge