1
2
3
4
5
6
7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11   PACIFIC MARINE PROPELLERS,          Case No.:  17cv555 BEN (NLS)
     INC.,
12                                       **ORDER ON JOINT MOTION FOR**
                              Plaintiff,  **DETERMINATION OF DISCOVERY**
13                                        **DISPUTE NO. 3**
     v.
14                                       **[ECF No. 40]**
15   WARTSILA DEFENSE, INC., BRYAN
     RUTTER, BOBBY HENINGER,
16                            Defendants.
17
18
19

20        Before the Court is the parties' Joint Motion for Determination of Discovery

21   Dispute No. 3 whereby Defendant Wartsila Defense, Inc. ("Wartsila") moves to compel

22   documents responsive to two document requests.  ECF No. 40.  Having reviewed the

23   briefing submitted and for the reasons set forth below, the Court **DENIES** Wartsila's

24   motion to compel.

25   **I.     BACKGROUND**

26       Plaintiff Pacific Marine Propellers, Inc. ("Plaintiff") and Wartsila both are in the

27   business of repairing marine propellers.  ECF No. 19 ¶¶ 6, 8.  In its Second Amended

28   Complaint ("SAC"), Plaintiff presents seven claims related to Wartsila's entry into the

1

San Diego marine propeller repair market and its actions in competing for government subcontracts.

Specifically, Plaintiff explains that only companies holding a Basic Ordering Agreement ("BOA") from the U.S. Navy may submit bids to the U.S. Navy or to civilian vessel repair contractors (who are in need of subcontractors) for marine propeller repair. Id. ¶¶ 14-15. As the holder of a BOA, Plaintiff underwent an audit by the Defense Contract Management Agency of the actual cost of providing marine propeller repairs on U.S. Navy vessels. Id. ¶ 20. The audit yielded Plaintiff's "wrap rate," which is an hourly rate for the audited cost of propeller repair and related work that includes labor and overhead costs. Id. Plaintiff states that it is the only facility at the Port of San Diego holding a BOA for propeller repair and that Wartsila holds BOAs at the Port of Seattle and the Port of Norfolk. Id. ¶¶16-17. In its SAC, Plaintiff alleges that Wartsila has intentionally underbid its own costs in order to improperly divert marine propeller repair work from Plaintiff in the Port of San Diego.

## II. DISCUSSION

Discovery Dispute No. 3 involves a dispute regarding Plaintiff's production of documents and responses to Wartsila's Request for Production of Documents ("RFP") Nos. 13 and 26, which are set forth below. ECF No. 40 at 1-2.

Request No. 13:

"All documents that evidence, support, refer to, or relate to your 'cost' of propeller repair, as the term 'cost' is used in California Business and Professions Code section 17026."

Plaintiff's Response to Request No. 13:

Responsive documents in Plaintiff's possession, custody and control will be produced. Plaintiff's wrap rate determination is previously produced in Response to Request No. 12 above. Plaintiff incorporates by reference its response to Request No. 12 as if fully set forth herein. Additional responsive information is set forth in Plaintiff's invoices and bids produced in response to Request No. 1. Generally, cost accounting calculations were done by Plaintiff's outside CPA, David Park, who as indicated above, passed

away recently.  Plaintiff is working to recover its files from his business and upon doing so will produce any additional responsive documents contained therein.

Request No. 26:

"To the extent not responsive to Request No. 24[1] or a previous Request for Production served by Wartsila, all documents necessary to compute your cost for performing propeller repair as the term cost is defined in [Cal.] Bus. & Prof. Code[] § 17026."

Plaintiff's Response to Request No. 26:

Objection is made to this Request on the following bases: (1) The Request is not limited or defined as to the time, location, or job scope; (2) There is no issue pending in the within litigation concerning Plaintiff's cost of performance, therefore the Request is overbroad, burdensome, not relevant and not likely to lead to admissible evidence; (3) Cost of performance for navy propeller repairs was determined by the Defense Contract Management Agency, and the audit letter was previously produced in response to Request Nos. 12 and 13; and (4) the Request is vague and ambiguous as to the documents being requested.  Plaintiff declines to speculate as to which documents Defendants may deem pertinent or necessary to perform the calculation(s) sought.  Without waiving the foregoing, see Response to Request No. 24.[2]

ECF No. 40 at 1-2.

Wartsila argues that Plaintiff already agreed to provide responsive documents and that Plaintiff's costs, nonetheless, are relevant.  Id. at 3.  Plaintiff responds that the motion is untimely with respect to Request No. 13 and that Request No. 26 is, by

---

[1] Request No. 24 requested "your financial records from January 1, 2012 to the present."  ECF No. 40 at 2 n.1.
[2] Plaintiff's response to Request No. 24 was: "Objection, this Request is duplicative of earlier Request Nos. 7 and 11.  Further objection on the grounds that the request is overbroad, burdensome, and not relevant to any issue pending in this action.  Notwithstanding the foregoing objections, plaintiff will produce standard financial statements to the extent they currently exist and have not been previously produced in the within action.  Plaintiff is willing to meet and confer to narrow the scope of the within request."  ECF No. 40 at 2 n.3.

17cv555 BEN (NLS)

Wartsila's own admission, an attempted end-run around the 45-day limitations period for bringing a discovery dispute. Id. at 11. Additionally, Plaintiff asserts that it already provided documents showing its wrap rate and will produce financial statements as soon as they are available. Id. at 12-16. But, to the extent Wartsila seeks other information regarding Plaintiff's calculation of costs, Plaintiff contends this information is not relevant. Id. 17-19.

### a. **Timeliness**

Under this Court's Chambers Rules, counsel were required to file their joint motion for determination of their discovery dispute within forty-five days of the service of Plaintiff's initial response to Wartsila's document requests. Hon. Nita L. Stormes, Civil Case Procedures § VI(C)(2)(b). Plaintiff served its response to Request No. 13 on August 18, 2017 (ECF No. 40 at 11), making this motion long-overdue as to that request (the forty-five days ran on October 2, 2017). Wartsila argues this delay should be excused because Plaintiff promised to produce responses and Wartsila waited in consideration of the unfortunate passing of Plaintiff's outside CPA. Id. at 3. However, as set forth in the Chambers Rules, a party faced with this dilemma should file a request to continue the deadline for filing their joint motion, citing good cause (see Hon. Nita L. Stormes, Civil Case Procedures §§ III(C) and VI(C)(2)(d)). See also LaNier v. United States, No. 15CV360-BAS (BLM), 2017 WL 951040, at *4 (S.D. Cal. Mar. 10, 2017) ("If a party is unable to comply with the [discovery motion] deadline, the party should file a motion to extend the deadline before the deadline passes and not wait nearly three months after the deadline passed before taking action."). Wartsila did not do so. And, while Plaintiff did agree in its response to Request No. 13 to produce responsive documents upon receipt of documents from its new accountant, such is the downside to not seeking court approval of side agreements between the parties. As the Court expressly warned the parties in its initial scheduling order in this case,

> If the parties reach an impasse on any discovery issue, counsel shall file an appropriate motion within the time limit and procedures outlined in the

undersigned magistrate judge's chambers rules. **A failure to comply in this regard will result in a waiver of a party's discovery issue. Absent an order of the court, no stipulation continuing or altering this requirement will be recognized by the court.**

ECF No. 15 at ¶ 2 (emphasis in original).  By not bringing a timely motion to compel these documents or seeking an extension of time in which to do so, Wartsila waived its right to compel the documents requested in Request No. 13.  See Guzman v. Bridgepoint Educ. Inc., No. CIV 11-0069-WQH WVG, 2014 WL 1057417, at *3 (S.D. Cal. Mar. 18, 2014) (denying motion to compel as untimely and noting that "[t]he clock does not reset simply because Plaintiff allowed Defendants to serve untimely responses").

With regard to Request No. 26, the question is whether it is duplicative of Request No. 13 and, thus, represents an attempt by Wartsila to circumvent the time bar on enforcing Request No. 13.  It seems apparent to the Court that the request for "all documents necessary to *compute* your cost for performing propeller repair as the term cost is defined in [Cal.] Bus. & Prof. Code[] § 17026" is covered entirely by Request No. 13's solicitation of "all documents that evidence, *support*, refer to, or *relate to* your 'cost' of propeller repair, as the term 'cost' is used in California Business and Professions Code section 17026." (emphasis added).  Under Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure, the Court must limit discovery that is "unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C).  Moreover, courts in this district, including this one, routinely reject attempts to circumvent discovery deadlines via duplicative discovery requests.  See, e.g., Cruz v. United States, No. 14CV2956-LAB (DHB), 2016 WL 727066, at *2–3 (S.D. Cal. Feb. 24, 2016) (finding subsequent RFP to be "substantially similar" to earlier RFP and rejecting as untimely joint discovery motion based on response deadline for subsequent RFP); ViaSat, Inc. v. Space Sys./Loral, Inc., No. 12-CV-0260-H WVG, 2013 WL 3467413, at *5–7 (S.D. Cal. July 10, 2013) (declining to allow end run around discovery deadline via Rule 30(b)(6) deposition on twenty-four topics duplicative of interrogatory responses, to which the court already denied motion

for supplemental responses); see also Bird v. PSC Holdings I, LLC, No. 12-CV-1528 W NLS, 2013 WL 1120659, at *1 (S.D. Cal. Mar. 18, 2013) (finding joint motion untimely, advising the parties that "any discovery demands which are substantially similar to previous demands will not re-start the clock for filing a discovery motion, and may be grounds for a protective order," but exercising discretion to address the merits)[3]. Here, more than five months have passed since Plaintiff served its initial response to Request No. 13. Because Wartsila seeks "substantially similar" information by way of Request No. 26, the Court finds that the joint motion to compel responses to Request No. 26 is an attempted end run around the expired deadline for seeking supplemental responses to Request No. 13. The joint motion, therefore, is untimely.

While Wartsila did not expressly argue that its failure to seek an extension of the deadline was the result of excusable neglect and that good cause existed to continue the deadline for moving to compel RFP No. 13 (see Fed. R. Civ. P. 6(b)(1) and Hon. Nita L. Stormes, Civil Case Procedures §§ III(C) and VI(C)(2)(d)), the Court will briefly consider these issues. LaNier, 2017 WL 951040, at *4 (requiring a showing of good cause and excusable neglect if request for extension is made after deadline passes); Herrera v. Hitman Fight Gear, LLC, No. CV 12-7927 AG (VBKX), 2013 WL 12138586, at *3 (C.D. Cal. Nov. 18, 2013) (same). In the context of schedules and deadlines set by district courts, good cause is shown if the party seeking the continuance acted diligently. See Johnson v. Mammoth Recreations, 975 F.2d 604, 609 (9th Cir. 1992). Wartsila argues that it did not move to compel earlier in light of Plaintiff's representation that responsive documents would be produced once they were collected and in consideration of the unfortunate passing of Plaintiff's accountant. ECF No. 40 at 3. Wartsila became

---

[3] The Bird case involved somewhat unique facts in that the document demands underlying the untimely motion were served by only one defendant in a five defendant case. Bird, 2013 WL 1120659, at *1. As a result, the defendants were under the misapprehension that any of the other defendants (who all were represented by the same counsel) could serve the same demands and restart the forty-five day clock. Id. The joint motion also was filed less than a month after the deadline, not five months late as in the instant case.

aware of the death when Plaintiff first responded to Request No. 13. Wartsila generally states that "[o]ver the months that followed," it became clear at some point that Plaintiff was not going to be producing more than financial documents. *See* ECF No. 40 at 6. Thus, at this point in time, it should have been clear to Wartsila that there was a conflict between the parties as to the scope of what Request No. 13 covers. While Wartsila fails to state exactly when this became clear, Wartsila obviously had this knowledge when it served Plaintiff with the second set of requests for production, including Request No. 26, which it admits it served due to Plaintiff's "narrow" interpretation of Request No. 13. Wartsila does not explain why it waited another two and a half months before bringing this motion.[4] The Court does not find that Wartsila has demonstrated good cause as to why it waited until now to bring a motion.[5]

Furthermore, it is not clear what, if any, additional information Wartsila seeks to obtain. Plaintiff stated in its response to Request No. 13 that it previously produced its wrap-rate, invoices, and bids in response to other requests. In the instant briefing, Plaintiff explains that "while the wrap-rate is determined for purposes of [the BOA] and pricing for work contracted directly with the [United States Navy], Plaintiff also chooses to use this rate when bidding subcontracts from civilian shipyards for naval surface ship propeller repairs."[6] ECF No. 40 at 12. Thus, whether or not Plaintiff is required to use the wrap-rate in bidding subcontracts, it does in fact do so and Wartsila can confirm this by consulting the bids and invoices already in its possession. To the extent Wartsila

---

[4] Neither party includes the date of when Wartsila served Plaintiff with Request No. 26, but assuming Plaintiff's response was timely when it was served on January 29, 2018, that request would have been served around the end of December 2017.

[5] Because the Court does not find that Wartsila showed good cause, it will not address excusable neglect.

[6] Plaintiff asserts that the wrap-rate falls within the definition of "cost" set forth in California Business and Professions Code § 17026. While Wartsila notes that "the issue in this case is the determination of cost according to Section 17026 of the California Business and Professions Code, not the determination of cost according to a department of the federal government," Wartsila does not explain how they differ or why the distinction matters in light of Plaintiff's acknowledgment that it uses the wrap-rate for government and non-government contracts.

17cv555 BEN (NLS)

seeks to evaluate Plaintiff's damages claim, it has Plaintiff's evidence of costs (via the wrap-rate) and bids and invoices from which it can confirm Plaintiff's claim that "the price charged and the price bid by Plaintiff was the wrap-rate plus a 10% profit." Id. at 15.[7] Wartsila does not identify any further examples of information or categories of documents it seeks from Plaintiff that it contends is necessary to determine cost.

## III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Wartsila's motion to compel.

**IT IS SO ORDERED.**

Dated: April 3, 2018

Hon. Nita L. Stormes
United States Magistrate Judge

---

[7] In addition, the Court notes that Plaintiff represents in its motion that it will produce its financial statements for the Fiscal Year that ended on March 31, 2017 once this information becomes available. ECF No. 40 at 16-17.