ANDRIA CATALANO REDCROW (SBN: 185605)
DANIEL B. MACLEOD (SBN: 39245)
LAW OFFICE OF ANDRIA CATALANO REDCROW
910 Hale Place, Suite 212
Chula Vista, CA 91914
Tel:  (619) 234-7000

Attorneys for Plaintiff,
Pacific Marine Propellers, Inc.

PILLSBURY WINTHROP SHAW PITTMAN LLP
MICHAEL EVAN JAFFE (*pro hac vice*)
GERALD ZINGONE (*pro hac vice*)
NATHANIEL R. SMITH (SBN 257615)
RAYMOND W. DUER (SBN 317666)
501 West Broadway, Suite 1100
San Diego, CA 92101-3575
Telephone: 619.234.5000
Facsimile: 619.236.1995

Attorneys for Defendants WARTSILA DEFENSE, INC.,
BRYAN RUTTER, and BOBBY HENINGER

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC MARINE PROPELLERS, Inc.,<br><br>Plaintiff,<br><br>vs.<br><br>WARTSILA DEFENSE, Inc., BRYAN RUTTER, and BOBBY HENINGER,<br><br>Defendants. | Case No.: 3:17-CV-00555-BEN-NLS<br><br>JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 4<br><br>Judge:  Hon. Nita L. Stormes |

/ / /

/ / /

/ / /

## I.    INTRODUCTION

Plaintiff PACIFIC MARINE PROPELLERS, INC. ("Plaintiff") and Defendant WARTSILA DEFENSE INC., BRYAN RUTTER, and BOBBY HENINGER ("Defendants") jointly request the Court's assistance in resolving a discovery dispute regarding providing to Plaintiff's retained expert Paul Moore documents that have been produced and identified as "confidential" and/or "attorneys eyes only" by Defendant Wartsila Defense, Inc. ("WDI").

## II.    JOINT STATEMENT

### A.    DISCLOSURE OF PAUL MOORE

Plaintiff's Initial Disclosures on July 31, 2017, identified Mr. Paul Moore as potentially having knowledge of some of the underlying facts and events in this case. However, on September 19, 2017, Plaintiff notified Defendants as follows, pursuant to Rule 26, that Paul Moore had been retained as an expert witness:

> ***Mr. Paul Moore***, identified in plaintiff's initial Rule 26 disclosure at Paragraph 28, appears to have no percipient knowledge relative to matters at issue in this case. Consequently, he has been engaged by counsel as a consulting expert on behalf of the plaintiff, and will likely later be engaged as a testimonial expert for trial. Mr. Moore may be contacted through plaintiff's counsel.

As reflected on Mr. Moore's CV, he retired in 2012 from Naval Surface Warfare Center as lead engineer responsible for Navy submarine and surface ship propellers, shafting, and related equipment. Decl. of Daniel MacLeod ("MacLeod Decl.") Ex. A, Moore CV. He was the technical authority for all issues related to manufacture, repair, and in-service. He was the instructor for propeller training courses for fifteen years, and developed the specialized technical requirements, specifications, standards, and drawings using advanced engineering and quality principals.

**B.     PROTECTIVE ORDER**

Following a Joint Motion for Determination of Form of Protective Order, this Court issued a Protective Order on November 13, 2017 [ECF Doc. 33], which states in pertinent part:

> Information designated "CONFIDENTIAL - FOR COUNSEL ONLY" must be viewed only by counsel (as defined in paragraph 3) of the receiving party, and by independent experts under the conditions set forth in this Paragraph.  The right of any independent expert to receive any Confidential Information will be subject to the advance approval of such expert by the producing party or by permission of the Court. The party seeking approval of an independent expert must provide the producing party with the name and curriculum vitae of the proposed independent expert, and an executed copy of the form attached hereto as Exhibit A, in advance of providing any Confidential Information of the producing party to the expert. Any objection by the producing party to an independent expert receiving Confidential Information must be made in writing within fourteen (14) days following receipt of the identification of the proposed expert. Confidential Information may be disclosed to an independent expert if the fourteen (14) day period has passed and no objection  has been made. The approval of independent experts must not be unreasonably withheld.

Protective Order, Doc. 33, p 10-11 ¶ 9.

**C.     PLAINTIFF'S REQUEST & THE PARTIES' ATTEMPTS TO RESOLVE DISPUTE**

In accordance with the Protective Order, Plaintiff sent an email to Defendants on March 26, 2018 stating that Plaintiff intended to produce various materials marked confidential to its expert Paul Moore.  Thereafter, on March 29, 2018, Defendants requested additional information from Plaintiff – the subject

matter of Mr. Moore's expertise and how it is relevant to the claims and defenses in the case; a CV updated to show post-2012 activities; Mr. Moore's current activities for PMP and others; and confirmation that Mr. Moore had not already been provided Defendants' confidential information – and implied that the objection might we withdrawn depending on the responses to those requests and if Mr. Moore was not provided with WDI's financial information.

On April 2, Plaintiff provided Defendants some of the requested information, and the parties were able to resolve some of the concerns raised by Defendant.  Regarding the request to identify Mr. Moore's subject matter and its relevance here, Plaintiff responded that Plaintiff was "under no such obligation at this time."  By email of April 4, 2018, Defendants continued to object to Plaintiff providing any documents marked by Defendants as "Confidential" or "Confidential – Attorneys' Eyes Only" to Mr. Moore.  Defendants also requested that Mr. Moore agree not to accept employment with NASSCO, BAE or PMP for a number of years following his expert testimony, a condition imposed and agreed upon by the parties' financial/accounting experts.

By email dated April 5, 2018, Plaintiff confirmed that Mr. Moore consents to the same restrictions as imposed on the other experts.  In response to the request for Mr. Moore's subject matter and its relevance to the claims and defenses in the case, Plaintiff stated "Mr. Moore's subject matter expertise is well known to your clients, just as it is known to our client and us.  Mr. Moore has an extensive experiential background and is a subject matter expert on the knowledge, skills and abilities necessary to perform propeller repairs to U.S. Navy specifications.  That expertise extends to having knowledge of the amount of time necessary to perform each aspect of a repair and the general amount of time required for each line-item specification within an RFQ."

The dialogue continued by phone and an email dated April 9, 2018, in which Plaintiff addressed the applicable law on the disqualification of experts and its

inapplicability to Mr. Moore.  Defendants stated that disqualification was a separate and distinct issue from whether Mr. Moore should be given access to Defendants' confidential information.

Defendants maintained their objection to Plaintiff's providing any Defendants' documents marked as "confidential" or "confidential – attorneys' eyes only" to Mr. Moore.  Among Defendants' stated bases for maintaining their objection were (1) Moore is not an "independent" expert, and (2) Defendants' Confidential Information was not necessary for Moore to form an opinion on the topics Plaintiff identified.

Counsel also discussed the dispute in person on Thursday, April 12, 2018, at the office of Defendants' counsel following the final non-expert deposition in this case.

## III.   PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES

Plaintiff contends that 1) the Protective Order does not require the consent of Defendants before releasing documents marked "Confidential" to an independent retained expert; and 2) that even if Defendants must consent, Defendants have unreasonably withheld consent contrary to the express mandate and spirit of the Protective Order.

### A.   DEFENDANT'S CONSENT IS NOT NECESSARY

The Protective Order defines "Confidential Information" as documents that are deemed to be "CONFIDENTIAL" or "CONFIDENTIAL – OUTSIDE COUNSEL ONLY."  Protective Order, Doc. 33, p 7 ¶ 1.

Paragraph 9 of the Protective Order is specific to "CONFIDENTIAL – FOR COUNSEL ONLY" and sets for the provisions by which an independent expert may receive documents marked as such.  However, the paragraph repeats the term "Confidential Information" several times.

Paragraph 10, however, mandates that information designated as "CONFIDENTIAL" may be viewed by an independent expert, in accordance with paragraph 8.

Presumably, the use of "Confidential Information" (capitalized, instead of in lower case) in paragraph 9 was intended to be a shorthand version for reference to "CONFIDENTIAL – FOR COUNSEL ONLY."  Only if this interpretation of the Protective Order is accepted may paragraph 9 and 10 be read in conjunction and be internally consistent.  To find otherwise would make paragraph 10 completely inapplicable.  Notably, the language of paragraph 9 was not a contested issue when the parties jointly sought the protective order.  (See Doc. 31-3)

In an abundance of caution, Plaintiff notified Defendant that it intended to release information designated "CONFIDENTIAL" to Mr. Moore.  The information that Plaintiff intends to produce to Mr. Moore is mostly designated "CONFIDENTIAL," or not subject to any confidentiality designation, although there are a few documents deemed "CONFIDENTIAL – FOR COUNSEL ONLY."

To avoid future confusion, Plaintiff respectfully requests that this Court order that the procedure outlined in paragraph 9 of the Protective Order be limited only to information that is deemed "CONFIDENTIAL – FOR COUNSEL ONLY".

**B.**   **PLAINTIFF'S EXPERT SHOULD BE PERMITTED TO RECEIVE INFORMATION DEEMED "CONFIDENTIAL – ATTORNEYS EYES ONLY"**

The court is empowered to control whether or how certain confidential information is revealed during the course of discovery. *Isis Pharmaceuticals, Inc. v. Santaris Pharma A/S Corp.*, No. 11-CV-2214-GPC-KSC (S.D. Cal. July 5, 2013) 2013 WL 3367575, *citing* Fed. R. Civ. Pro. 26(c)(1)(G).

The district court has broad discretion to make discovery and evidentiary rulings conductive to the conduct of a fair trial, including disqualifying expert testimony.  *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980).

"However, disqualification is a drastic measure that courts should impose only hesitantly, reluctantly, and rarely." *Hewlett-Packard Co. v. EMC Corp.*, 330 F.Supp.2d 1087, 1092. The Court in *Hewlett-Packard Co.* succinctly summarized the applicable law pertaining to expert witnesses:

> "* * * disqualification of an expert is warranted based on a prior relationship with an adversary if (1) the adversary had a confidential relationship with the expert and (2) the adversary disclosed confidential information to the expert that is relevant to the current litigation. *See Wang Labs., Inc. v. Toshiba Corp.*, 762 F.Supp. 1246, 1248 (E.D.Va.1991). However, if only one of the two factors is present, disqualification likely is inappropriate. *See* [*Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, LLC*, 202 F.R.D. 426, 429 (E.D. Penn. 2001)]; [*English Feedlot, Inc. v. Norden Laboratories, Inc.*, 833 F.Supp. 1498, 1502 (D.Col. 1993)] (If "any confidential disclosures were undertaken without an objectively reasonable expectation that they would be so maintained (hence, any confidentiality was waived), or if, despite a relationship conducive to such disclosures, no significant disclosures were made, disqualification is inappropriate."). In addition to these two factors, the Court also should consider whether disqualification would be fair to the affected party and would promote the integrity of the legal process." 330 F.Supp.2d at 1092-1093.

Defendants seek to reverse this standard, and have this Court determine that Mr. Moore is not an "independent expert" because of prior communications between Plaintiff PMP's personnel and Mr. Moore.  As stated above, the standard is whether Mr. Moore had a prior relationship with Defendants, not the inverse.  In none of the meet and confer efforts between counsel have Defendants asserted that

they had a confidential relationship with Mr. Moore.  Defendants protest that Mr. Moore is not independent because of prior communications between PMP and Mr. Moore.  While PMP maintains that the contact between it and Mr. Moore prior to litigation was minimal, the extent of the contacts is immaterial, because the standard is whether Mr. Moore had a prior confidential relationship with defendants.

In *Isis*, this Court examined a factually similar situation, where plaintiff sought to release "Confidential" and "Confidential – Outside Counsel Only" information to its expert (Dr. Nicholas M. Dean).  Defendant objected on the basis that "[Dr. Dean] has a longstanding relationship with plaintiff and he actively consults in defendants' same industry."  *Isis*, 2013 WL 3367575 at *3.  Dr. Dean had spent 15 years working for Plaintiff where he had co-invented 40 patents that had been assigned to Plaintiff, and was the Founder, Board Member, and Chief Scientific Officer of a company that did substantial business with plaintiff until it was purchased by another company.  Despite this relationship, the court found "that the modest risk of inadvertent disclosure of defendants' confidential information within this admittedly small field does not justify defendants' demand that Dr. Dean be precluded from serving as an expert witness in this case. *Id.* at *6.

Similarly, the industry which is the subject of this action – propeller repair on U.S. Navy vessels – is a small industry.  There are four entities in the U.S. that have "Basic Ordering Agreements" (BOAs) to conduct this type of repair for the U.S. government.  There are a limited number of individuals that are competent to on the subject matter, and fewer still that are competent and available to be an expert witness.  Many individuals who are competent in this subject matter are precluded from acting as an expert witness due to their current or past employment.

17-CV-0555-BEN-NLS

Furthermore, the limited communications that Mr. Moore had with PMP should not disqualify him. The contacts that Dr. Dean had with plaintiff in *Isis* were exponentially more comprehensive as opposed to the contacts here. In *Isis*, the Dr. Dean had a direct long-standing financial relationship with Plaintiff. Dr. Dean was a former employee. Dr. Dean was a co-inventor of patents and later a business associate. Mr. Moore has never been an employee of Plaintiff. Mr. Moore has never received any financial compensation from Plaintiff PMP. Mr. Moore had no analogous relationship prior to being retained as a litigation expert by plaintiff's counsel.

Defendants are attempting to argue that Mr. Moore is somehow biased due to a perceived pre-existing relationship, and/or his testimony and expert opinions would be irrelevant. Any bias would be best addressed at deposition and a pre-trial motion. Defendants are attempting a de facto exclusion of Mr. Moore as an expert for plaintiff by precluding Mr. Moore from even receiving the information from which he might form an opinion adverse to Defendants' interests.

Contrary to Defendants' arguments, Mr. Moore did not act in the interest of either Defendants or Plaintiff. Mr. Moore was a recognized authority in the Navy propeller and shafts industry. MacLeod Decl. Ex. B, King Dep. Tr. 132:14-19. Plaintiff's employee, Mr. King, did not ask Mr. Moore to have discussions with people Mr. Moore knew about Defendant's entry into the propeller market. Ex. B, King Dep. Tr. 133:1-4. Mr. Moore was an industry expert; and Mr. King could discuss industry-specific issues with Mr. Moore. Smith Decl. Ex 2, King Dep. Tr. 142: 7-14. Read in context, Mr. King's testimony concerns the quality and subsequently the safety considerations of Defendants' work after Wartsila had already obtained a job in the San Diego market. This was raised in communications with Mr. Moore and another government official, Ken Green. Ex. B, King Dep. Tr. 130-136.

### C.   THERE IS NO RISK OF INADVERTENT DISCLOSURE OF CONFIDENTIAL INFORMATION

In cases involving "trade secrets or other confidential commercial information" the court is required to "balance the risk of disclosure to competitors against the risk that a protective order will impair prosecution or defense of the claims." *SolarCity Corp. v. Doria* No. (S.D. Cal. Dec. 21, 2017) 2017 WL 6551239 *citing Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 555 (C.D. Cal. 2007) (*citing Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992)); *see also* 6 James Wm. Moore et al., Moore's Federal Practice § 26.105[8][a], at 26-550 (3d ed. 2017) ("To demonstrate good cause under [Rule 26(c)(1)(G) ], the party seeking the protective order must show that the information sought is a trade secret or other confidential information, and that the harm caused by its disclosure outweighs the need of the party seeking disclosure.") (footnote omitted).

Although Defendants have not articulated a risk of inadvertent disclosure, a brief discussion is merited.

Mr. Moore executed the Court prescribed "Agreement to be Bound by Protective Order," a copy of which was provided to Defendants.  Mr. Moore agreed to be subject to the jurisdiction of this Court and understands that any disclosure or use of Confidential Information may subject him to sanctions for contempt of court.  Accordingly, there are safeguards in effect to prevent the use and disclosure of any inadvertent disclosure.

There is no evidence that Mr. Moore is in anyway in competition with Defendants.  Mr. Moore is a part-time/on-call marine engineer/consultant to ESC Federal, LLC, a company which provides support to the National Oceanic and Atmospheric Administration (NOAA) for vessel acquisition, design and delivery.

None of the information that Mr. Moore would receive puts him in the position of having an unfair advantage over Defendants, or portends his unauthorized mis-use of Defendants' information or data.

The data plaintiff proposes to share with Mr. Moore concerning Wartsila, consists primarily of bids and bid estimates and related materials from bids made for propeller repair work in San Diego during the period 2014-2016.

### D.   <u>PLAINTIFF WILL BE PREJUDICED IF ITS EXPERT IS PRECLUDED FROM RECEIVING CONFIDENTIAL INFORMATION</u>

In determining whether disqualification of an expert is warranted, courts balance competing policy objectives as well as fairness and potential prejudice to each party in the litigation. *Hewlett Packard Co.*, 330 F.Supp.2d at 1093.

By withholding consent that Mr. Moore may receive confidential information, Defendants are, in effect, attempting to disqualify Mr. Moore as an expert during the discovery phase of litigation. Doing so at this point in litigation is unwarranted. From the outset, Plaintiff has identified to Defendant that Mr. Moore is a subject matter expert, and is well known within the industry – including the Defendants. Mr. Moore has extensive knowledge and experience regarding propeller repairs to U.S. Navy specifications. In fact, Mr. Moore was the primary author of many of the propeller repair work specifications at issue in this case. His knowledge includes the amount of time necessary to perform each of the various aspects of a propeller repair, and the general amount of time required for each line-item specification within a Request For Quotation.

Defendants have posited that Mr. Moore's opinions are irrelevant to this litigation. Defendants seek to control the manner in which Plaintiff prepares and presents its case. Although during meet and confer exchanges Plaintiff has invited Defendants to present authority to support its position, it has not done so; and Plaintiff is aware of none that would allow for an opposing party to define or limit

during discovery the expert a litigant may retain.  Even assuming, *arguendo*, that Mr. Moore's opinions would be irrelevant, this is a matter best decided <u>after</u> Mr. Moore has formed his opinions, been deposed, and when the record can be presented to the Court for determination before his testimony.

The drastic disqualification of Mr. Moore at this point in litigation would severely prejudice Plaintiff's ability to prepare and present its case at trial.

## IV.   <u>DEFENDANT'S MEMORANDUM OF POINTS & AUTHORITIES</u>

Providing Defendants' Confidential Information to Paul Moore is improper and unnecessary.  First, Moore is not an "independent expert."  He was directly involved in events underlying this lawsuit – namely, Plaintiff's efforts (revealed in discovery) to obstruct Defendant WDI's efforts to enter the San Diego market and compete with Plaintiff for propeller repair work.  Having acted on behalf and in support of Plaintiff in the run-up to this lawsuit, Moore should not be permitted access to WDI's Confidential Information as a supposed independent expert.

Moreover, WDI's Confidential Information is entirely unnecessary for Moore to offer an opinion on the subjects identified by Plaintiff.  Plaintiff suggests Moore will opine on the amount of time necessary to perform certain aspects of propeller repairs.  Moore does not need WDI's information in order to provide such an opinion – and Plaintiff makes no effort to explain how or why he would.  All Moore would need is the scope of the work being requested.  Plaintiff can provide Moore that information without disclosing WDI's Confidential Information to Moore.  The obvious purpose of providing WDI's Confidential Information to Moore is to allow Moore to peek at WDI's answer before giving his own.

### A.   <u>The Protective Order Requires Approval for Disclosure of Confidential or Highly Confidential Information.</u>

As a preliminary matter, the Court should reject Plaintiff's claim that the Protective Order does not require Defendants' consent to the disclosure of

information Defendants designated as "Confidential."  Plaintiff ignores the plain language of the Protective Order.

As WDI has already explained to Plaintiff, Paragraph 1 of the Protective Order defines "Confidential Information" as including both material designated "Confidential" and material designated "Confidential – For Counsel Only."  ECF No. 33 at 7:14-21.  Paragraph 9 of the Protective Order provides that "[t]he right of any independent expert to receive Confidential Information will be subject to the advance approval of such expert by the producing party or by permission of the Court."  In the context of Paragraph 9, and everywhere else in the Protective Order, "Confidential Information" means both Confidential and Confidential-For Counsel Only information.  *E.g.*, *id.* at ¶¶ 7.a., 14, 15, 16, 17, 18, 23-28.  The right of any independent expert to receive material designated "Confidential" therefore requires approval by WDI or permission of the Court.

Plaintiff's proposed reading of Paragraph 9 would ignore the definition of "Confidential Information" provided in the very first paragraph of the Protective Order and used throughout the Protective Order, and should be rejected.

## B.   Paul Moore is Not an "Independent" Expert.

The protective order contemplates the disclosure of Confidential Information to "independent experts."  Plaintiff's proposed expert, Mr. Moore, fails the threshold requirement of being "independent" of PMP and the events giving rise to this litigation.

Plaintiff misses the mark in arguing that WDI seeks to "reverse" the standard for disqualification. WDI is not moving to disqualify Moore. Rather, the issue presented in this motion is whether Moore should be provided WDI's Confidential Information. A threshold question in that inquiry is whether Moore is an "independent" expert. On that question, the focus is appropriately on Moore's involvement on behalf of PMP to stymie WDI's effort to enter the San Diego market.

### 1.   **Paul Moore acted as a partisan in support of Plaintiff's efforts to prevent competition from WDI.**

Discovery has revealed that Plaintiff embarked on a concerted campaign to obstruct WDI's efforts to enter the San Diego market after learning WDI had successfully bid for propeller repair work in competition with Plaintiff. Plaintiff's efforts to stymie competition from WDI included "orchestrat[ing] a congressional inquiry" into WDI, lodging complaints with multiple government agencies, including the FBI, protesting the government's approval of WDI's operations in San Diego, obtaining internal government emails regarding WDI's entry into San Diego propeller market, and alarming the customers (shipyards) that the customers would be violating Navy regulations if they did business with WDI. After those efforts failed, Plaintiff approached WDI and proposed WDI acquire Plaintiff. Decl. of Nathaniel R. Smith ("Smith Decl.") Ex. 1, Oxberry Dep. Tr. 72:22-74:12 ("I orchestrated a Congressional inquiry into Wartsila's activities regarding the [San Diego] waterfront facility."); Smith Decl. Ex. 3, Dep. Ex. 122 at PMP-001285-1286 (email to Paul Moore from Plaintiff's employee Jim King ("The groundwork with the Senator's and Congressional offices is established")); Smith Decl. Ex. 4, Dep. Ex. 134 (email from J. King to Defense Security Services regarding WDI); Smith Decl. Ex. 5, Dep. Ex. 135 (letter from Plaintiff to the Office of the Secretary of the Navy regarding WDI); Smith Decl. Ex. 6, Dep. Ex. 120 (emails between Paul Moore and Jim King); Smith Decl. Ex. 2, King Dep. Tr. 134:24-135:5 (admitting having received internal government emails regarding WDI).

Paul Moore was directly involved Plaintiff's efforts to stymie competition from WDI. In consultation with Plaintiff's employee Jim King, Moore sought and obtained inside information from the government entity(ies) for which he previously worked. Smith Decl. Ex. 6 Dep. Ex. 120 at PMP-000955, email from Paul Moore ("I was right, the letter was written by Rick Vath."). He attempted to

have the approval of WDI's operations rescinded.  *Id.* (stating Navy personnel "got a little defensive when I recommended he rescind the letter. … I left him with the statement that I would hate to have to defend his letter in court as he would lose."). He even recommended to PMP that PMP attempt to initiate a congressional inquiry (which PMP later did, unsuccessfully).  *Id.* ("I would recommend that you pursue a congressional inquiry into the issues.  You might also consider filing a FOIA request to NAVSEA and NSWC for a copy of the completed facility assessment checklist."); *see also* Smith Decl. Ex. 7, Dep. Ex. 131 (Paul Moore: "I think a congressional inquiry will shed light on this issue from NAVSEA's management, something that may have a positive effect on the situation.").

Plaintiff has attempted to whitewash Moore's activities on behalf of Wartsila, characterizing his involvement as "answering technical questions and making a general suggestion as to those in government service to whom Mr. King might direct a specific concern."  Plaintiff also attempted to minimize Moore's involvement by withdrawing him from Plaintiff's list of fact witnesses and contending instead that he had been retained as a consulting expert.

Plaintiff's own documents belie Plaintiff's contention.  Plaintiff's supplemental interrogatory responses also contradict Plaintiff's effort to downplay Moore's role, revealing instead that Plaintiff regularly consulted with Moore regarding WDI's entry into the San Diego market.  Smith Decl. Ex. 8, Pl.'s Supplemental Response to WDI Interrog. No. 6 at 15:1-28 ("Starting in about January 2015, Mr. Bateman [Plaintiff's president] had conversations by phone about once a month with Mr. Paul Moore, after his retirement, concerning Wartsila's effort to enter the San Diego propeller market. … They also discussed the NAVSUP protest and its denial.  …. Mr. King also had several similar conversations with Mr. Moore and several email exchanges that began about December 2014 and continued into 2015 concerning Wartsila and how to address issues with the protest.").

Plaintiff's attempts in this Joint Motion to recharacterize King and Moore's conversations fare no better.  Plaintiff states in this motion that its employee Mr. King "did not <u>ask</u> Mr. Moore to have discussions" with people Moore knew in the government about WDI's entry into the market," citing King's deposition at page 133, lines 1-4 (underlining added).  Plaintiff presents an incomplete picture of King's testimony.  Later on that same page, King testifies that he "talked to Paul Moore several times relative to Wartsila's entry into the market."  MacLeod Decl., Ex. B at 133:20-22.  Those conversations included Plaintiff's protest to the government, and understood that "[a]t least one of the elements" motivating that protest was to hinder WDI's ability to compete in the market.  Smith Decl. Ex. 2, King Dep. at 141:11-142:3.  King also acknowledged that a "potential, you know, ramification" of his conversations with Moore was that Moore would seek information from people Moore knew in the government from his time there.  *Id.* at 142:13-143:5.  And King admitted that Moore did in fact provide King with information Moore received from government personnel.  *Id*. at 143:13-144:5.

The evidence thus shows that Mr. Moore has, at all relevant times, acted as Plaintiff's agent regarding facts directly at issue here.  As a result, his involvement here is appropriately evaluated as if the information at issue were being provided to an employee of Plaintiff– not an "independent expert."

2.   **<u>As a partisan actor on Plaintiff's behalf in the events underlying this lawsuit, Paul Moore should not be given access to WDI's Confidential Information.</u>**

The Protective Order does not define "independent expert," and research has not revealed a case interpreting the meaning of "independent" in this context. However, "[a] protective order should be read in a reasonable and common sense manner so that its prohibitions are connected to its purpose."  *In re Incretin Mimetics Prod. Liability Litig.*, 2015 WL 1499167, MDL Case No. 13md2452

AJB (MDD) (S.D. Cal. Apr. 1, 2015) (citing *In re Dual Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)).

Here, the purpose of the Protective Order is to protect the confidentiality of trade secret or other confidential commercial information.  ECF No. 33 at 7:5-13.  As the Protective Order acknowledges, at least some of the information sought in discovery "are, for competitive reasons, normally kept confidential by the parties."  Plaintiff, which faced no competition in the San Diego propeller market before WDI sought entry, is now suing its lone competitor.  WDI's sensitive competitive information – such as WDI's bids, bid estimates and related materials – should be protected from disclosure to its competitor, Plaintiff.

In the ordinary case, a retained expert witness is considered "independent" of the party on whose behalf the expert is testifying because the expert had no prior involvement in the underlying events.  The expert is viewed more as an appendage of the party's counsel than of the party itself; for example, draft reports are protected as attorney work product.  Fed. R. Civ. P. 26(a)(2)(A).  That view should not apply to Paul Moore; his efforts on behalf and in support of Plaintiff in the events leading up to this lawsuit reveal that he is an appendage of Plaintiff, not counsel.

Moore's involvement in the events leading up to this lawsuit distinguish him from the retained expert in *Isis Pharmaceuticals*, cited by Plaintiff.  In that case, the retained expert's relationship with the retaining party ended over seven years before the retention.  *Isis Pharmaceuticals, Inc. v. Santaris Pharma A/S Corp.*, 2013 WL 3367575, at *4 (S.D. Cal. July 5, 2013).  Here, Paul Moore's actions on behalf of Plaintiff occurred in the approximately two years immediately preceding Plaintiff's filing of this lawsuit.

**C.** **There is No Prejudice to Plaintiff in Retaining Confidentiality of WDI's Confidential Information, and Plaintiff Identifies None.**

Also unlike *Isis*, there is no prejudice to Plaintiff if Moore is not given access to WDI's Confidential Information. *Isis* was a patent infringement case involving patents covering "antisense technology." The plaintiff retained Dr. Dean to provide expert opinions and information regarding the antisense drug discovery process as it related generally to the patents at issue. The Court found it was "essential for plaintiff to have an antisense expert qualified to testify regarding the process of drug discovery and development." *Isis*, 2013 WL 3367575, at *7. The Court also found that the defendants' own choice of an officer and management team member of a competitor as defendants' expert "bolsters this conclusion." *Id.*

Here, by contrast, one would be hard-pressed to find in Plaintiff's motion an explanation of what opinions Moore has been retained to offer. During the meet-and-confer process, Plaintiff initially refused to identify Moore's role, or how they might be relevant to the claims and defenses in the case. Only later did Plaintiff state, broadly, that Moore "has knowledge and experience regarding propeller repairs to U.S. Navy specifications," that his knowledge "includes the amount of time necessary to perform each of the various aspects of a propeller repair, and the general amount of time required for each line-item specification within a Request for Quotation." The Court and WDI are left to glean that Moore will opine on the amount of time that he was necessary to perform the repairs in the bids and quotations involved in this lawsuit.

WDI's Confidential Information is entirely unnecessary for Moore to offer his opinion on the amount of time necessary to perform the requested repairs. Moore only needs the requests for quotation ("RFQ") sent from the shipyard (BAE, NASSCO) to the bidders (Plaintiff, WDI) – *i.e.*, the scope of work to be bid upon – in order to opine on how much time he thinks the requested work should take. In other words, Moore can do what WDI did – review the RFQ and estimate

the amount of time needed to perform the requested tasks based on the RFQ, the specifications identified therein, the type of vessel, etc.  The absence of WDI's Confidential Information does not hinder his ability to provide that estimate.  *See Isis*, 2013 WL 3367575, at *3 (noting court must balance the risk of disclosure to competitors against risk of harm to plaintiff's ability to prosecute its case).

Plaintiff makes no effort to explain why Moore needs WDI's Confidential Information – "bids and bid estimates and related materials from bids" – to offer his opinion regarding (presumably) how much time WDI should have estimated. The obvious purpose behind providing Moore WDI's bids and bid-related information is to ensure Moore to know, in advance, what numbers or range of numbers to *avoid*.

Even if Paul Moore were considered an "independent" expert for purposes of the Protective Order, Plaintiff's request to provide WDI's Confidential Information to him should nonetheless be denied.  As Plaintiff recognizes, the Court must balance the risk of disclosure to competitors against the risk that precluding Moore from reviewing WDI's Confidential Information will impair Plaintiff's prosecution or defense of the claims.  Here, there is no prejudice to Plaintiff because WDI's Confidential Information is unnecessary to the opinions Moore might wish have to offer.

## V.     CONCLUSION

The parties respectfully request the Court's assistance in resolving this discovery dispute.

Respectfully submitted,

Dated:  April 20, 2018                LAW OFFICE OF ANDRIA CATALANO
                                      REDCROW


                                      */s/ Andria Catalano Redcrow*
                            By:       ANDRIA CATALANO REDCROW
                                      Attorney for Plaintiff,
                                      PACIFIC MARINE PROPELLERS, INC.

Dated:  April 20, 2018                PILLSBURY WINTHROP SHAW
                                      PITTMAN LLP


                                      */s/ Nathaniel R. Smith*
                            By:       NATHANIEL R. SMITH
                                      Attorneys for Defendants
                                      WARTSILA DEFENSE, INC., BRYAN
                                      RUTTER, and BOBBY HENINGER


### Certification of Authorization for Electronic Signature

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to Nathaniel R. Smith, counsel for Defendants, and that I have obtained Mr. Smith's authorization to affix her electronic signature to this document.

Dated:  April 20, 2018                LAW OFFICE OF ANDRIA CATALANO
                                      REDCROW


                                      */s/ Andria Catalano Redcrow*
                            By:       ANDRIA CATALANO REDCROW

**PROOF OF SERVICE**

I, Andria Catalano Redcrow, am over the age of 18 years and not a party to the within action; my business address is 910 Hale Place, Suite 212, Chula Vista, CA 91914.

On April 20, 2018, I caused the JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 4 to be served on the parties in Case Number 3:17-cv-00555-BEN-NLS as follows:

On all parties identified for Notice of Electronic Filing generated by the Court's CM/ECF system under the above-referenced case caption via Notice of Electronic Filing generated by the Court's CM/ECF filing system, pursuant to the Court's Local Rules to the addressees listed above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  April 20, 2018          */s/ Andria Catalano Redcrow*
                                 ANDRIA CATALANO REDCROW