UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

PACIFIC MARINE PROPELLERS, INC.,

Plaintiff,

v.

WARTSILA DEFENSE, INC., BRYAN RUTTER, BOBBY HENINGER,

Defendants.

Case No.: 17cv555 BEN (NLS)

**ORDER ON JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 4**

**[ECF No. 46]**

Before the Court is the parties' Joint Motion for Determination of Discovery Dispute No. 4, whereby the parties request the Court's assistance in determining whether Plaintiff's retained expert, Paul Moore, may be shown documents designated by Defendants as "confidential" and/or "attorneys eyes only." ECF No. 46. Having reviewed the briefing submitted and for the reasons set forth below, the Court finds that Mr. Moore qualifies as an "independent" expert and may be shown confidential documents needed for his testimony, provided that he signs and adheres to the "AGREEMENT TO BE BOUND BY PROTECTIVE ORDER" form in the Protective Order entered in this case (ECF No. 33).

## I. BACKGROUND

Plaintiff Pacific Marine Propellers, Inc. ("PMP") and Defendant Wartsila Defense, Inc. ("Wartsila") both are in the business of repairing marine propellers. ECF No. 19 ¶¶ 6, 8. In its Second Amended Complaint, Plaintiff presents seven claims related to Wartsila's entry into the San Diego marine propeller repair market and its actions in competing for government subcontracts. Relevant to the specific issues presented in the instant motion is the following background information.

### A. Paul Moore

On July 31, 2017, PMP identified Mr. Paul Moore in its Initial Disclosures as a person who may potentially have knowledge of the underlying facts and events in this case. Subsequently on September 19, 2017, PMP changed its position and notified Wartsila that:

> Mr. Paul Moore, identified in plaintiff's initial Rule 26 disclosure at Paragraph 28, appears to have no percipient knowledge relative to matters at issue in this case. Consequently, he has been engaged by counsel as a consulting expert on behalf of the plaintiff, and will likely later be engaged as a testimonial expert for trial. Mr. Moore may be contacted through plaintiff's counsel.

ECF No. 46 at 2.

According to Mr. Moore's CV, he retired from the Navy after 36 years of service. ECF No. 46-2 at 2. During this time at the Navy, he was responsible for "the life cycle management of all Navy submarine and surface ship propellers, shafting and related equipment," including "[t]echnical authority for all issues relating to manufacture, repair and in-service." *Id.* He was also an instructor for propeller courses for the last 15 years. *Id.* He is currently employed as a Part-time/On-call Marine Engineer at ECS Federal, LLC, where he "[s]upports the National Oceanic and Atmospheric Administration's (NOAA's) Platform Acquisition Division in all facets of vessel acquisition from preliminary design through vessel delivery," among other tasks for NOAA. *Id.*

//

### B. Mr. Moore's Communications with PMP

Relevant to this motion, Mr. Moore had a prior relationship with PMP. As pertinent background, on January 12, 2015, Derek Bateman from PMP sent a letter to the Office of the Secretary of the Navy regarding the contract originally awarded to PMP and later cancelled and given to Wartsila. ECF No. 46-8. The letter accuses Wartsila of not having a Basic Ordering Agreement ("BOA") to perform work in San Diego and not being equipped to perform the work. *Id.* at 4. The letter specifically states that Wartsila applied for a BOA but was rejected. *Id.* The letter also alleges that Wartsila presented a letter signed by a Jeffrey Schumann ("Schumann letter") that qualifies Wartsila to conduct propeller repairs in San Diego in connection to the Lake Erie contract, and that this letter is in contradiction to the BOA rejection. *Id.* Mr. Bateman goes onto to call into question the appropriateness of the Schumann letter and accuses Wartsila of deception in connection with that letter and the contract bids. Mr. Moore's communications with PMP appear to be related to at least some of the issues raised in Mr. Bateman's letter.

In response to an interrogatory regarding communications with "any person concerning Wartsila's participation in the San Diego propeller repair market," PMP disclosed the following:

> Starting in about January 2015, Mr. Bateman had conversations by phone about once a month with Mr. Paul Moore, after his retirement, concerning Wartsila's effort to enter the San Diego propeller market. In the course of those conversations, Mr. Moore suggested a congressional inquiry concerning the status of Wartsila's San Diego operations as a "NavSea Certified Propeller Repair Facility." They also discussed the range of Wartsila bid prices to the extent they were then known and the reasonableness of those bids considering the man-hours involved. They also discussed the NAVSUP protest and its denial. We have no records from which precise dates or times can be ascertained; however it is fair to state that the conversations were contemporaneous with the events discussed. Mr. King also had several similar conversations with Mr. Moore and several email exchanges that began about December 2014 and continued into 2015

concerning Wartsila and how to address the issues with the protest.

Mr. King has made phone calls and sent email to Mr. Moore, with whom he had a long professional working relationship and now sees as a friend in retirement. Mr. King wrote to Mr. Moore on May 13, 2015, and met with him not long after while Mr. Moore was in San Diego for an unrelated matter. Mr. King had expressed concerns to Mr. Moore about the technical grinding to the edge of propellers being performed by Wartsila and identified defects in the repairs that would potentially impair the performance of the propeller blades to the detriment of the Navy. He provided photographs to Mr. Moore for his opinion and feedback and sought guidance on how to address the issue of government malfeasance in failing to address the deficient performance by Wartsila."

ECF NO. 46-10 at 15.

Documents and deposition testimony also substantiate the relationship. Emails produced during discovery between James King and Mr. Moore show that Mr. King emailed Mr. Moore about the Schumann letter on December 12, 2014. ECF No. 46-9. Mr. Moore responded, giving advice about his interpretation of the letter, whether it should have been issued in his opinion, and what he would do to deal with the issue. *Id.*; ECF No. 46-7. Mr. Moore also indicated that he spoke to James Schumann regarding the letter. *Id.* at 46-7 at 7. James King testified about this email exchange with Mr. Moore during his deposition. ECF No. 46-6 at 7. The emails submitted by the parties on this issue appear to span from December 12, 2014 to January 15, 2015. ECF No. 46-9.

**C. Protective Order**

On November 13, 2017, the Court entered a Protective Order in this case upon the parties' joint motion. ECF No. 33. In relevant part, the Protective Order states:

9. Information designated "CONFIDENTIAL - FOR COUNSEL ONLY" must be viewed only by counsel (as defined in paragraph 3) of the receiving party, and by independent experts under the conditions set forth in this Paragraph. The right of any independent expert to receive any Confidential Information will be subject to the advance approval of such expert by the producing party or by permission of the Court. The party seeking approval of an independent expert must provide the producing party with the name and

> curriculum vitae of the proposed independent expert, and an executed copy of the form attached hereto as Exhibit A, in advance of providing any Confidential Information of the producing party to the expert. Any objection by the producing party to an independent expert receiving Confidential Information must be made in writing within fourteen (14) days following receipt of the identification of the proposed expert. Confidential Information may be disclosed to an independent expert if the fourteen (14) day period has passed and no objection has been made. The approval of independent experts must not be unreasonably withheld.
>
> 10. Information designated "CONFIDENTIAL" must be viewed only by counsel (as defined in paragraph 3) of the receiving party, by independent experts (pursuant to the terms of paragraph 8), and by the additional individuals listed below, provided each such individual has read this Order in advance of disclosure and has agreed in writing to be bound by its terms: a. Executives who are required to participate in policy decisions with reference to this action; b. Technical personnel of the parties with whom Counsel for the parties find it necessary to consult, in the discretion of such counsel, in preparation for trial of this action; and c. Stenographic and clerical employees associated with the individuals identified above.

*Id.* at 9-10.

**D. The Parties Dispute Disclosure of Confidential Information to Paul Moore**

Subsequently, PMP sent an email to Wartsila stating that it intended to show Mr. Moore various documents that had been marked confidential. ECF No. 46 at 3. Wartsila responded by asking for more information regarding Mr. Moore, including his area of expertise and relevance to the issues in the case, an updated CV, his current activities for PMP, and confirmation he had not already been shown Wartsila's confidential information. *Id.* at 3-4. On April 2, PMP sent some of the requested information to Wartsila. PMP responded that Mr. Moore's area of expertise was: "Mr. Moore has an extensive experiential background and is a subject matter expert on the knowledge, skills and abilities necessary to perform propeller repairs to U.S. Navy specifications. That expertise extends to having knowledge of the amount of time necessary to perform each aspect of a repair and the general amount of time required for each line-item specification within an [Request for Quotation]." *Id.* at 4. Mr. Moore has also agreed to be bound to

not accept employment with NASSCO, BAE, and PMP for a number of years following his testimony. *Id.* However, the parties continued to dispute whether Mr. Moore should be shown Wartsila's confidential information and were unable to reach a resolution. *Id.* at 4-5.

## II. <u>DISCUSSION</u>

Discovery Dispute No. 4 involves whether Mr. Moore can be shown Wartsila's confidential information under the Protective Order. Wartsila primary argument as to why Mr. Moore should not be shown these documents is because he is not an "independent" expert in light of his role and communications with PMP in challenging Wartsila's entry into the San Diego market. ECF No. 46 at 5.

In analyzing whether to approve an expert as "independent" under the terms of a protective order, courts generally weigh the following factors: (1) the expert's position within the receiving party's business as an officer, shareholder or employee; (2) the extent of the expert's regular employment or association with the receiving party; (3) the expert's "present involvement in the receiving party's competitive decisions, including participation in or advice related to research;" (4) "the potential for future involvement of the expert in the receiving party's competitive decisions;" and (5) if the expert is not deemed independent, whether the expert is willing to "forego future involvement with the receiving party." *Ares-Serono, Inc. v. Organon Int'l B.V.*, 153 F.R.D. 4, 6-7 (D. Mass. 1993) (quoting *Digital Equip. Corp. v. Micro Tech., Inc.*, 142 F.R.D. 488, 491 (D. Colo. 1992)); *see also Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 250 F.R.D. 426, 433 (D. Neb. 2008) (reciting same factors); *AG Fur Atherische Ole v. Gucci Am., Inc.*, No. 04CIV.280(GBD)(THK), 2006 WL 838996, at *2-3 (S.D.N.Y. Mar. 28, 2006) (same). The burden is on the party opposing disclosure to show why the risk of disclosure of its confidential information outweighs the risk of harm to the other party's ability to prosecute its case. *Isis Pharm., Inc. v. Santaris Pharma A/S Corp.*, No. 11cv2214-GPC (KSC), 2013 WL 3367575, at *3 (S.D. Cal. July 5, 2013).

The primary concern addressed by these factors centers around the worry that the

confidential information will be used to harm the party whose confidential information is being divulged or to place that party at a competitive disadvantage. *Ares-Serono*, 153 F.R.D. at 6 (finding expert independent where "she no longer participates in [plaintiff's] competitive decisions); *Streck*, 250 F.R.D. at 433 (noting that expert's role was to make product compatible with another product "rather than to improve [plaintiff's] products for the general competitive market"); *see also Isis Pharm.*, 2013 WL 3367575, at *3 ("When a party is concerned with about the competitive misuse of confidential information and a protective order appears to be insufficient protection, the court must balance the risk of disclosure to competitors against the risk of damaging the claims or defenses of the party seeking access.") (quoting *Santella v. Grizzly Indus., Inc.*, No. 12mc00131-SI, 2012 WL 5399970, at *4 (D. Or. Nov. 5, 2012)). In addition, the temporal focus of this inquiry is on the present relationship between the expert and the party, not the past relationship. *Compare Ares-Serono*, 153 F.R.D. at 6 (noting that expert is a former employee and "[h]er contact with Serono in the future appears tenuous at best") *and Streck*, 250 F.R.D. at 433 (noting that expert was no longer working with plaintiff's employees") *with Digital Equip. Corp*, 142 F.R.D. at 492 (expert "has been retained by [defendant] on an ongoing basis" and this "continuing nexus to an important aspect of [defendant's] business" disqualifies him as serving as an independent expert).

With these guiding principles in mind, the Court finds that Mr. Moore qualifies as an "independent" expert. The emails and testimony establishes that Mr. Moore had a relationship with individuals at PMP during the timeframe of late 2014 through early 2015. As Wartsila argues, this evidence may well be interpreted as showing that Mr. Moore aided PMP in challenging Wartsila's entry into the San Diego propeller repair market and may be partisan to PMP.[1]

---

[1] While the Court understands the basis for Wartsila's concerns, this opinion is limited to whether Mr. Moore qualifies as an "independent" expert under the relevant law and does not foreclose Wartsila from challenging Mr. Moore's expert role in other ways, such as in a future *Daubert* motion or by attacking his opinions based on their perceived bias.

However, the test to determine if an expert is "independent" focuses on the present and future involvement of Mr. Moore with PMP. The scope of the relationship as evidenced by the testimony and documents occurred about two years prior to the filing of this lawsuit, as Wartsila even acknowledges. Wartsila does not present any evidence to show that Mr. Moore acts as an officer or employee of PMP currently, has any regular association with PMP, or has any role in PMP's current competitive decisions or may have involvement in such decisions in the future. As Mr. Moore's CV shows, he is currently employed on a part-time basis to consult with NOAA's vessel acquisition.

Wartsila's argument that Mr. Moore will use its confidential information to its detriment is based on speculation that the past relationship necessarily means a current or future relationship. Wartsila expresses concern that its confidential information, including bids, bid estimates, and related materials, will be divulged to its competitor PMP. However, Wartsila fails to establish that divulging such information to Mr. Moore—provided that he has signed the "AGREEMENT TO BE BOUND BY PROTECTIVE ORDER" form which exposes him to sanctions for contempt of court—would result in that the information being divulged to PMP. Moreover, Mr. Moore has already agreed that he is willing to forego employment with PMP. *Ares-Serono*, 153 F.R.D. at 6 (fifth factor being if the expert is willing to "forego future involvement with the receiving party"); *Digital Equip. Corp.*, 142 F.R.D. at 492 (expert can become "independent" if he "relinquishes his non-litigation consulting activities for Micro and agrees not to perform such non-litigation related consulting work for Micro in the future").

Wartsila also argues that, regardless of whether Mr. Moore is independent or not, he does not need the confidential information to form an opinion regarding the amount of time required to perform a repair or task that would appear in a Request for Quotation—the only specific topics on which PMP has disclosed that Mr. Moore will opine. PMP states that the data that it intends to share with Mr. Moore is primarily bids and bid estimates and related materials from bids made for propeller work in San Diego during

the period of 2014-2016. ECF No. 46 at 11. The Court finds it reasonable that an expert who may opine on the amount of time required to perform a task related to propeller repair may need to see bid or bid estimates in the relevant time frame, from the relevant market in San Diego. It would also not be unreasonable that such an expert may also opine on the related topic of whether certain bids or bid estimates are reasonable or not. And, as the Court discussed above, any potential harm to Wartsila is minimized by Mr. Moore signing the agreement to bound and his agreement to not work for PMP in the future.[2]

## III. CONCLUSION

For the foregoing reasons, the Court finds that Mr. Moore qualifies as an "independent" expert and may be shown confidential documents needed for his testimony, provided that he signs and adheres to the "AGREEMENT TO BE BOUND BY PROTECTIVE ORDER" form.

**IT IS SO ORDERED.**

Dated: May 3, 2018

Hon. Nita L. Stormes
United States Magistrate Judge

---

[2] The parties also dispute the circumstances under which a party needs to approve of the opposing party's expert before he can be shown confidential information under Paragraph 9 of their Protective Order. ECF No. 46 at 5-6, 12-13. In this instance, however, Mr. Moore was already disclosed to Wartsila who objected (under the procedure outlined in Paragraph 9) and the Court rules in this motion that he qualifies as an "independent" expert. Thus, the Court need not address this specific argument.